UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL TEMPLET** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-3674** |
| **MICHAEL J. ASTRUE,**<br>**COMMISSIONER OF SOCIAL**<br>**SECURITY ADMINISTRATION** | **SECTION "C" (3)** |

### REPORT AND RECOMMENDATION

Before the Court are cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Having reviewed the motions, administrative record and applicable law, **IT IS RECOMMENDED** that the Court GRANT the Commissioner's Cross Motion for Summary Judgment, DENY Plaintiff's Motion for Summary Judgment and DISMISS this case with prejudice.

### I. BACKGROUND

### A. Procedural History

Plaintiff/claimant, Michael Joseph Templet ("Templet"), seeks judicial review under 42 U.S.C. § 405(g) of the Social Security Act ("the Act") of the Social Security Administration Commissioner's final decision finding Plaintiff not disabled and therefore ineligible for disability benefits under the Act. On August 8, 2005, Templet applied for a period of disability, disability insurance benefits and supplemental security income, claiming that he became unable to work on April 20, 2002, due degenerative disc disease with suspected nerve damage (back problems)

1

and chronic atrial fibrillation (heart problems).[1]  Plaintiff alleged at the outset that he could "drop dead any time due to [his] severe heart condition and that he "can't stand on cement for long periods," "walk for long distances" and "it is hard to lift and carry when his back is stressed."[2]

After plaintiff's disability request was initially denied,[3] he filed a request for a hearing before an Administrative Law Judge.[4]  A representative, Marvin Gros, was appointed to represent Templet at the February 15, 2007 hearing.[5]  Plaintiff testified that he did not believe that he could work an eight hour day *because of his heart condition*.[6]  Templet further testified that the company doctor would not let him go back to work "because of [plaintiff's] afib."

---

[1]*See* Application for Disability Insurance Benefits filed August 8, 2005 [Adm. Rec. 37-39]; Application for Supplemental Security Income Benefits filed August 10, 2005 [Adm. Rec. 159-162];  Adult Disability Report dated September 22, 2006 (stating that conditions which limit claimant's ability to work are "heart and back problems") [Adm. Rec. 78-79]; Templet's Letter to Congressman dated August 7, 2006 (stating that he "can no longer work *as a pipe fitter"* due to "chronic A-Fib and severe back pain due to nerve damage") (italicized emphasis added) [Adm. Rec. 47].

[2]Adult Disability Report dated September 22, 2006 (stating that conditions which limit claimant's ability to work are "heart and back problems") [Adm. Rec.79];

[3]*See* Disability Determination and Transmittal dated November 4, 2005 [Adm. Rec. 163].

[4]*See* Claimant's Request for Hearing By Administrative Law Judge dated November 22, 2005 (stating that his reason for requesting a hearing and disagreeing with the determination was simply that "I cannot work")[Adm. Rec. 32].

[5]*See* Form Appointment of Representative dated November 22, 2005 (appointing an attorney, Marvin Gros) [Adm. 31].

[6]*See* Transcript of the February 15, 2007 Hearing before ALJ Glynn Voisin (stating "to be perfectly honest ... I don't think I could last eight-ten hours" because of ... my heart, [] it's been really bad, the last couple of years especially") [Adm. Rec. 181].

Plaintiff explained that Dr. Lee "was scared that [Templet] would catch a stroke."[7] Plaintiff considered his heart problem to be "the primary reasons why [he] could not go back to work;" however, he did note that "there are days that [his] back really bothers him a lot."[8]  Templet admitted that the only times he had been hospitalized for his heart condition were: (1) "once, way back in the early 90's" he was hospitalized overnight at Chabert in Houma, Louisiana to stabilize his heart rhythm; and (2) "the second time was for ... the same thing" but plaintiff was discharged the same day.[9]  As for medication, Templet stated he was only on the beta blocker Atenolol to ease the workload on his heart.[10]  Plaintiff testified that the only other time a doctor placed restrictions on his ability to work was in 2001, following a motor vehicle accident.  At that time, he was restricted from lifting because of his back; however, he is no longer receiving worker's compensation and he has settled with his employer.[11]

Templet testified the he is capable of taking care of himself in all respects.  As to a typical day in his life, plaintiff watches television, does housework, cooks, plays the piano and visits family.[12]  Templet further admitted that there were no limitations or restrictions noted on his driver's license and that he does in fact drive around town and go to the grocery store.[13]

---

[7]*Id.* at 182.

[8]*Id.*

[9]*Id.* at 184.

[10]*Id.* at 182-183, 185 ("Q. You take any other medication, other that Atenolol?  A. No, sir.").

[11]*Id.* at 185.

[12]*Id*. at 187-188.

[13]*Id.* at 186.

Notwithstanding the foregoing, plaintiff stated that his low back pain is always present in the background; on a one to ten scale, he rated his level of back pain as "sometimes, it's a ten." [14]

Following the administrative hearing and pursuant to his review of the record, Administrative Law Judge Glynn Voisin determined that : (1) Templet is a 36 year old ("younger individual"), capable of reading, writing and communicating in English; (2) he has "severe" impairments (low back pain, hypertension and atrial fibrillation) but that none of his impairments, either singly or in combination, meet or medically equal one of the listed impairments; (3) claimant is unable to perform any of his "past relevant work" as a pipe fitter, seafood processor or delivery driver but has the residual functional capacity to perform sedentary work although he must alternate between sitting and standing; and (4) based on the testimony of Vocational Expert Mary Elvir, (a) claimant can perform the requirements of representative sedentary occupations including dispatcher, cashier, information clerk and receptionist and (b) that he is capable of making the successful adjustment to this sedentary work that exists in significant numbers in the national economy.[15] The ALJ concluded that Templet is not disabled within the meaning of the Social Security Act.[16]

On March 21, 2007, Templet sought review of the hearing decision/order.[17] On June 2, 2007, the Appeals Council denied the request for review and adopted the decision of the ALJ as

---

[14] *See* Transcript [Adm. Rec. 186].

[15] *See* Notice of Decision dated March 15, 2007 [Adm. Rec. 10]; Decision of ALJ Voisin [Adm. Rec. 15-19]; Resume of VE Mary Catherine Elvir [Adm. Rec. 8]; Transcript of Testimony of VE Elvir [Adm. Rec. 188-198].

[16] Decision of ALJ Voisin[Adm. Rec. 19].

[17] *See* Request for Review of Hearing Decision dated March 21, 2007 [Adm. Rec. 6-7].

the final decision of the Commissioner.[18]  On July 11, 2007, Templet timely filed the captioned matter.[19]  The matter has been fully briefed and is ripe for determination.

### B. Medical Evidence

Essentially, Templet asks the Court to reweigh the evidence.  More specifically, Plaintiff contends that the ALJ ignored the medical records and his testimony in determining that he was not disabled, arguing that both clearly show that the claimant was disabled.  This Court is not persuaded.

At the outset, the undersigned notes that Plaintiff's alleged depression is subclinical since he has never been treated for same. At no time during the hearing did Templet refer to any treatment for such a condition or indicate that any mental condition, no matter how slight, had any effect on his ability to participate in gainful employment.  The undersigned's *de novo* review of the plaintiff's medical records corroborate the ALJ's conclusions that Templet is not suffering from any combination of *disabling* impairments or conditions.

Turning to Templet's history of low back pain and atrial fibrillation, medical records of Teche Regional Medical Center's Emergency Room note that on December 15, 2002, he was examined in connection with complaints of a sharp pain in his mid-lower back. [Adm. Rec. 151]. Plaintiff presented a history of recent trauma to his back (motor vehicle accident) and atrial fibrillation. [Adm. Rec. 148, 150].  The clinical impression was "low back pain." [Adm. Rec. 149].  Radiology reports regarding x-rays of his thoracic and cervical were "normal." [Adm. Rec. 154, 155].  The neurological exam revealed no apparent sensory or motor deficit and

---

[18]*See* Notice of Appeals Council Action dated June 2, 2007[Adm. Rec. 3-5].

[19]See Complaint [Fed. Rec. Doc. 1].

straight leg raising test results were negative. His extremities were all non-tender and exhibited full range of motion. [Adm. Rec. 149].

On July 25, 2004, plaintiff was again seen in the Emergency Room at Teche Regional, complaining of thoracic pain. The clinical impression noted was "chronic back pain." [Adm. Rec. 137]. Templet reported a history of atrial fibrillation which was treated with Atenolol. [Adm. Rec. 140]. The only objective finding noted was decreased range of motion in his thoracic spine. [Adm. Rec. 137]. His psycho-social assessment was completely normal, to wit: (1) appearance - clean; (2) behavior - appropriate; (3) cares for himself; (4) ambulates independently; and (5) nutritional status normal.

Reddy Family Medical Clinic records reflect that plaintiff either called in or was seen on the following dates because he needed to refill his Atenolol prescription, to wit: 5/20/05, 8/17/05, 11/08/05, 11/25/05, 12/19/05, 1/6/05 and 9/18/06. [Adm. Rec. 88, 89, 108-111].

On January 5, 2007, plaintiff was admitted to Teche Regional with complaints of palpitations and related a past history of atrial fibrillation. [Adm. Rec. 113]. Plaintiff's physical examination revealed that all systems were normal and he appeared in no acute distress. The only clinical finding was "irregular rhythm"/atrial fibrillation [Adm. Rec. 114/121]. The physician ordered an increase in his prescription for Atenolol to 150 mg. [Adm. Rec. 115]. Templet was instructed to see his cardiologist and discharged. [Adm. Rec. 121].

An undated note on Family Medical Clinic letterhead states that Templet has been a patient of the clinic since January 21, 2005. It further notes that he has been diagnosed with atrial fibrillation. In addition, the doctor states that Templet's cardiac rhythm is stable during clinic; however, he does complain of *post-exertional* dizziness and palpitation. [Adm. Rec. 157].

On October 25, 2005, Rohi Khanolkar M. D. performed a consultative examination and reported no objective findings of any debilitating condition, to wit:

> 1. Chronic low back pain....   Patient has 90 degrees of anterior flexion in the lumbo sacral spine with negative straight leg raising test.  Patient has a normal gait on examination, complains of neurological claudications after walking about 100 yards.  MRI was not delivered, but patient was told of two herniated discs in the lumbo sacral spine.  Patient currently does not have any evidence of atrophy, spasms or focal logical deficits.  Circumferential diameters are equal bilaterally.  Patient has no instability in gait and does not need an assistance device at this point of time.  Patient has normal sensations in both lower extremities.  Patient does complain of 5/10 low back pain which is worse on exertion.  Patient able to get on and off of the examination table without assistance.  Patient may benefit from repeat MRI of lumbo sacral spine with nerve conduction studies.  If results of nerve conduction studies are positive patient might benefit from surgical management.
> 2. Atrial fibrillation with shortness of breath and hypertension.  Blood pressure is fairly controlled.  There is no evidence of congestive heart failure.  Patient had a normal stress test in 1996.  Patient does have complaints of chest pain.  Patient has intermittent complaints of palpitations.  Patient is unable to do more than five mets of work.  May have physical deconditioning.  Documents of stress test or ECHO are not with patient or in chart.  However, patient does not have any physical findings suggestive of CHF.
> 3. Anxiety and Depression.  Patient can not afford medication for the same.  Patient appears to be fairly well compensated. No suicidal or homicidal ideations.

[Adm. Rec. 98].   The examination further revealed that all systems were normal.  Additionally, the physical examination results were completely normal. [Adm. Rec. 97].  Neurologically, Templet appeared normal, his appearance was neat and appropriate, his disposition was lucid, alert, pleasant and cooperative and he was well-oriented – *i.e.*, plaintiff's mental status was completely normal.  Moreover, plaintiff exhibited normal range of motion, no evidence of abnormalities of the limbs, no evidence of peripheral joint inflammation and no sensory or motor deficits.  There was no atrophy, paresis, tremor or paralysis of any muscles. [Adm. Rec. 97-98].  None of the aforesaid findings suggest significant limitation or disability.

Dr. Repp Latisha conducted a physical residual functional capacity assessment

and concluded that plaintiff is capable of performing sedentary work. [Adm. Rec. 101]. The only postural limitation was *occasional* climbing of ropes and ladders. No manipulative, visual, communicative or environmental limitations were noted. [Adm. Rec. 102-105].

## II. LAW

### A. Standard of Review

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence they must be affirmed. *Martinez*, 64 F.3d at 173.

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, reweigh the evidence or substitute its own judgment for that of the Commissioner. *Carey v. Apfel,* 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is

entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 113, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey,* 230 F.3d at 135. Any of the Commissioner's findings of fact which are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555.

Despite this limited function, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990). A claimant, such as the plaintiff, is considered disabled only if his physical or mental impairment is so severe that he is unable to do not only his previous work, but cannot, considering his age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists or whether he would be hired if he applied for work. 42 U.S.C. § 1382(a)(3)(B).

### B. Entitlement to Benefits Under the Act

To be considered disabled and eligible for disability benefits under the Act, Plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 and Appendices, §§ 416.901 to 416.988 (1995). The regulations include a five-step

evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

The five-step procedure for making a disability determination under the Social Security Act was restated in *Shave v. Apfel*, 238 F.3d 592 (5th Cir.2001):

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 239 F.3d at 594 ( *quoting Crowley v. Apfel*, 197 F.3d 194 (5th Cir.1999)).

The four elements of proof weighed in determining whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir.1995). "The Commissioner, rather than the courts, must resolve conflict in the evidence." *Id*.

### III. ASSIGNMENTS OF ERROR

Plaintiff contends that the ALJ erred by failing to fully credit plaintiff's complaint of *debilitating* low back pain and atrial fibrillation. Templet's argument is that his testimony regarding the severity of his back pain and cardiac condition should be given more weight in light of his medical treatment history. Plaintiff further contends that crediting the plaintiff's complaints fully would result in a determination of disability based upon the VE's opinion predicated on the fifth hypothetical posed by the ALJ.

The Commissioner contends that substantial evidence and relevant legal standards support the Commissioner's decision that the Plaintiff was not *disabled* within the meaning of the Social Security Act.

### IV. ANALYSIS

**Substantial Evidence Supports the ALJ's Determination**

The issue at this level of review is whether substantial evidence supports the ALJ's rejection of Plaintiff's subjective symptoms and complaints of *disabling* pain in light of the objective medical evidence and treatment records. Plaintiff's chief complaint is *disabling* back pain symptoms and atrial fibrillation.

The law requires that the ALJ make affirmative findings regarding a claimant's subjective complaints. *See Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir. 1994)(*citing Sharlow v. Schweiker,* 655 F.2d 645, 648-49 (5th Cir. 1981)). When a plaintiff alleges disability resulting from pain, he must establish a medically determinable impairment that is capable of producing *disabling* pain. *See Ripley v. Chater,* 67 F.3d 552, 556 (5th Cir. 1999) (*citing* 20 C.F.R. §

404.1529). Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity. *See id.*

As a routine part of the administrative process in an appeal from a denial of disability benefits, the ALJ must review and assess the subjective comments of the claimant. This process requires the ALJ to assess the individual claimant's credibility related to claims of disability. An assessment of the individual's credibility must be based upon the entire record, including medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions and statements/reports from the individual, treating or examining sources, and other persons with information about the effects of plaintiff's symptoms. SSR 96-7p. If medically determinable impairments are identified, the ALJ must assess the "intensity, persistence, and limiting effects of the individual's symptoms" to determine the extent of plaintiff's limitations. *Id.*

When making this assessment pursuant to SSR 96-7p, the ALJ must consider several factors in addition to the objective medical evidence, to wit:   (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medications that the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factor concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id.*

As to a determination of whether the plaintiff's pain is disabling, the first consideration is

whether the objective medical evidence shows the existence of an impairment which could reasonably be expected to induce the pain alleged. Medical factors which indicate disabling pain include: limitation of range of motion, muscle atrophy, strength deficits, sensory deficits, reflex deficits, weight loss or impairment of general nutrition, noticeable swelling and muscle spasms.

The medical record uniformly reflects that plaintiff exhibits none of these medical factors which might suggest debilitating back pain. The plaintiff's own testimony does not suggest that his *back condition* prevents him from working eight hours a day on a sustained basis.[20] Instead and as discussed at the outset, Templet attributed his decision to quit working to his cardiac arrhythmia which is well-controlled with medication (Atenolol). The medical record reflects only one emergency room visit attributable to palpitations and plaintiff was released within a few hours. Plaintiff's treatment records regarding his heart problem consists by and large of notations regarding telephone calls or visits to his family clinic seeking refills for Atenolol. Admittedly, that is the only prescription drug medication Templet takes.

The medical records reflect that the plaintiff's condition is well-controlled with the prescription drug medication Atenolol. The medical records disclose no sound basis whatsoever for crediting claimant's complaints of *disabling* pain or other symptoms. The ALJ discussed all of the medical evidence available and articulated sound reasons for discounting the plaintiff's subjective complaints of *debilitating* symptomotology. There is substantial evidence to support the ALJ's conclusion that Templet's allegations of "disabling" limitations are not corroborated by positive clinical or medical findings, medical treatment records or even the plaintiff's own testimony regarding his activities of daily living.

---

[20]*See* Notes 6-14, *supra*, and accompanying text.

SSR 99-2p provides that "[i]n assessing [residual functional capacity], all of the individual's symptoms must be considered in deciding how such symptoms may affect functional capacities." SSR 99-2p. The ALJ fully complied with this requirement. Indeed, the decision contains a thorough evaluation of plaintiff's symptoms based on the medical evidence and his own testimony at the hearing.

The ALJ has sole responsibility for determining a claimant's disability status.[21] Where there is conflicting evidence regarding an issue reserved for the Commissioner, he has the responsibility to resolve that conflict.[22] The final decision on whether a claimant is disabled for purposes of the Act is a legal one rather than a medical one, and that determination may be made only by the Commissioner.[23]

Inasmuch as the record establishes that the ALJ's RFC determination is supported by substantial evidence, the only question remaining is whether the ALJ properly relied on the vocational expert's testimony. The real issue here is whether the ALJ incorporated all of the limitations that he found were reasonably demonstrated by the record and permitted counsel the opportunity to cross-examine the vocational expert. *Bowling v. Shalala,* 36 F.3d 431, 436, (5th Cir. 1994). ALJ Voisin complied with the regulations. The ALJ was not required to adopt the VE's opinion based upon the last hypothetical question, *which included restrictions and limitations that the ALJ rejected as unsubstantiated*.

---

[21]*Paul v. Shalala,* 29 F.3d 208, 211 (5th Cir. 1994); *Moore v. Sullivan,* 919 F.2d at 905.

[22]*Greenspan*, 38 F.3d at 237; *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Spellman*, 1 F.3d at 364; *Moore*, 919 F.2d at 905.

[23]*See Tamez v. Sullivan*, 888 F.2d 334, 336 n.1 (5th Cir. 1989).

In summary, plaintiff has identified no testimony or medical statement which dilutes the record to the degree required to compel the conclusion that the ALJ's ultimate finding is insufficiently supported.

## V. RECOMMENDATIONS

Substantial evidence supports the Commissioner's determination that Templet has the residual functional capacity to perform sedentary work (alternating between standing and sitting) and that such work is available in significant numbers in the national economy.  Because none of the plaintiff's points of error should be sustained and the Commissioner's determination is supported by substantial evidence,  **IT IS RECOMMENDED** that the Court GRANT the Commissioner's Cross Motion for Summary Judgment, DENY Plaintiff's Motion for Summary Judgment and DISMISS this case with prejudice.

## OBJECTIONS

Objections must be: (1) specific, (2) in writing, and (3) served within ten days after being served with a copy of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b) A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the unobjected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.  *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 11th day of September,  2008.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**